and we'll move to the second case this morning. Thank you, Your Honor. Howell v. Wexford Health Sources, Inc. This is plaintiff Tom Flora. Am I to proceed at this point? We have you and Ms. Ritz, and you may proceed with regard to case number two. May it please the Court, Counsel. This is a prisoner case in 1983, Section 1983, and a med mal case. Plaintiff Donald came into the prison with two eyes, and he left with one. He had a complicated medical history. Are we arguing Donald or Howell? No. I was told Donald, but I'm happy to switch to Howell, Your Honor. Howell is the case number two. Ms. Ritz, which case are you ready to argue? Howell, Your Honor. I'm happy to see Mr. Howell with the Howell case, Counsel. All righty, I will switch to Howell. All right. May it please the Court, Counsel, in the Howell case. Plaintiff contends that Wexford's collegial review process is unconstitutional and deprived him of his Eighth Amendment rights. The Seventh Circuit has remarked that overturning a jury verdict is not something that the court does lightly, and it should do so only if no rational jury could have brought a verdict in. The court shouldn't make any credibility determinations or weigh the evidence. Now, probably the most important thing about our case is two points. The evidence was sufficient for a reasonable jury to find in favor of the plaintiff, and it did. The lower court overturned the jury verdict based on a Rule 50 motion, and that was errant for two reasons. Number one is because the court exceeded its authority under Rule 50B by granting the motion based on a reason not originally brought under the Rule 50A motion. Plaintiff. Excuse me, Counsel, but on that on that point, I understood the 50A motion to have incorporated oral arguments that had been made to the court. And counsel for the defense argued, among other things, that plaintiff has not presented evidence that there was a widespread practice or policy or custom of delaying or denying care. The evidence shows there were far more approvals on the first time. I assume that refers to the collegial review process. Then there was a specific need to. It's a little bit garbled, but was that not enough to preserve the issue for a 50B motion? No, I don't think it was. I think you had to. I think what they're trying to do is invite themselves into a new issue. Clearly, I don't believe that they they're trying to, I guess, to like a salamander changes colors. And that wasn't the the original argument brought. So I think it's a different argument. Additionally, so that suffices that issue that I think it's a new issue. It's our contention that the collegial review process is irreparably flawed and inherently unconstitutional. It's been a precipitating force for countless Eighth Amendment claims that arrive at the Seventh Circuit. It really shouldn't be tolerated. Can't be fixed. I think it's it's very clear. I believe the lower court acknowledged that there were six referrals that had been recommended, six different referrals, all of them denied by collegial review. Now, I think it's important for this court to understand that there was the case Glisson cited. And if you look at the Honorable Judge Wood's dissent in the Glisson case, she even mentions the Supreme Court case Pemba versus Cincinnati. But you do recall that that went in bank, right? And Judge Wood wrote the majority opinion for the in-bank court. I don't recall that, Your Honor. Summary judgment in Glisson was reversed in bank and the case was sent back for trial. But let me ask you about this this point, Mr. Leora, because there are situations where and you've probably seen these cases. We've seen them where the prisoner may present with symptoms that may be may may really require urgent care. We'll be talking about that with respect to Mr. Donald's eyes, no doubt, a little bit later this morning. But when we're talking about orthopedic injuries, it seems to me one of the most significant facts relevant to your attack on the collegial review process is Dr. Coates, the the outside expert commendation that surgery for Mr. Howell be treated as a last resort. Very quick choices. You probably understand far better than I, given your your background, but that the choices in orthopedic care between conservative and surgical treatment often result in delay. No question about it. Dr. Coates had recommended that given the fact that where he was in prison, he wasn't a good candidate to initially proceed with orthopedic surgery for the ACL. But what Dr. Coat did recommend was it was a specific type of brace and a specific type of rehabilitation. And that didn't occur either. It was months and months, and I think it was 18 months before the the brace that Dr. Coates had originally recommended was ever given to the patient. So it's our contention that even if he didn't have orthopedic surgery to correct that ACL, that it warranted some type of treatment, i.e. the brace and and the rehab. And that was a problem in this case. So I think under the Supreme Court, Pemba versus Cincinnati, that even one instance can result in Monell liability. So our position is, is that the that the court to take this out based on some belief that that there was a requirement for multiple and multiple denials, I think is misplaced. Dr. Trost himself requested outside specialty consultation on six different occasions. So the GLSEN court points out institutional liability can be proven in a number of ways, including but not limited to repeated actions. There were repeated denials here. I don't think we'd be here if there was one or two, but to suggest that no reasonable jury could find as it found, I think it's a wrong decision. I think then we start stepping in front of the jury and deciding issues, you know, for replace the jury with the judge. And that's probably my biggest problem with this particular case. One other point, and I wanted to mention how has consistently made the assertion that the the collegial review process is flawed when you can have a non treating physician who doesn't even examine you decide the issues. One other really important point, the lower court referred to reference. This is like an insurance company review. Insurance companies deny care, deny payment all the time. And that is clearly true. But the situation is different in the real world or private world. If a patient is unhappy and the insurance company denies it, the patient is always free to just go and go ahead and have that treatment and then pay for it himself. In this particular case, Hal couldn't do this. His only option for care was in the prison, and he wasn't getting what the specialists had recommended. He wasn't getting what Dr. Trost had recommended. And that was because this this collegial review process allowed one person who'd never even seen him to make the decisions. I was supposed to have a clock up in my thing, but I don't see a clock. I don't know where I'm at. You've got about six minutes left. Okay, so I guess my point on this is that there was an abundance of evidence in the record that would allow a jury, certainly a reasonable jury, to come up with a finding that even if Trost wasn't the bad guy, because Trost is the one that had made the six recommendations, that it was Wexford, the defendant, that was liable because they repeatedly denied referrals that Trost had made. And so I think that's the sum and substance of this particular case. Just briefly on punitive damages, I believe the court improperly took that away from the jury as well. We've cited it. I don't have to go any more on this case. I'm happy to answer any question the judges might have. I don't see any. You have about five minutes left. If I could, with your patience, I'd like to ask about your affidavits from these four other prisoners from the Hill facility from 2017. I really have two questions. One is, I didn't quite understand the timing of their presentation to the district court. I understand the district court didn't rely on that point. But they did come just before trial. And second, I would think that to use those to prove deliberate indifference, you'd need at least some evidence that the decisions for treating those prisoner patients were medically inappropriate. And I didn't see that being offered. Well, I don't believe that's correct, Your Honor, with all due respect. To say then we would then have to have five trials or four trials within a trial, meaning we'd have to bring experts in from those cases to testify that the care was improper for each of the inmates that wanted to submit an affidavit saying that they'd been denied care based on this collegial review process. I don't think there is such a requirement. I think it would be entirely appropriate to have those individuals to support a claim of customer practice to testify what happened to them. And I've run into that in a couple other cases where the judges cautioned, we're not going to get into this five different trials or if there's five witnesses, four witnesses and debate and let the jury decide. I think it would be enough just to submit the witnesses. But then the court brings up that the affidavits weren't allowed, but that was based on the motion in limine ruling that said they couldn't do it. And then the court places the basis of partially that it didn't present any evidence. Well, they're told they can't present this in front of the court. So, again, I don't think the court can have it both ways. Council, I'll give you additional two minutes in your rebuttal. Thank you. Ms. Fritz, you may proceed. Thank you, Your Honors. May it please the court. My name is Abby Fritz and I represent Wexford Health Sources and Dr. Just as a really quick initial matter, Mr. Howell failed to preserve any argument on appeal as related to the jury verdict in favor of Dr. Trost and therefore no further argument regarding the matter against Dr. Trost should be right before this court. But as for the matter against Wexford, the district court properly determined that Howell failed to meet his burden of proof at trial that Wexford had a policy or procedure which caused Howell physical harm. First, Howell's argument in the district court was not of an express policy or procedure, but it was rather of a widespread custom and practice. It was actually the application of the collegial review process as a quote unquote means to disregard the recommendations of the physicians and a means to disregard the medical guidelines for knee injuries or orthopedic injuries, which was at issue in this case. Therefore, it was not whether the collegial process was unconstitutional in and of itself, but it was the application of that process by the individual doctors and physicians who are part of collegial review. Second, the court correctly granted Wexford's judgment as a matter of law because Howell failed to set forth sufficient evidence that there was a widespread custom and practice of delaying medical care through the application of collegial review. And lastly, it was well within the court's discretion to exclude the affidavits, not only because of their timing, but they were on the eve of trial and actually three and a half years into this case where they only first disclosed. But I know the timing was bad, but the district court would have discretion to allow that, at least in some circumstances and timing wasn't really her concern here. So I asked you to focus on this, the problem that Mr pleura highlighted. And it certainly Can be portrayed as a whipsaw. I'm not going to let you present evidence of other prisoners and after you get the verdict. I'm going to strike it down because you didn't present evidence from other prisoners now. The problem that I'm looking at there was for instance, if that's the rule, it may well be. But if that's the rule, it means that both discovery and trial of these sorts of cases will be much more Expansive and expensive. Than they typically have been because I would think that the Plaintiff raising a claim like Mr. Don or Mr. Howell's here. Would have to be entitled to look at the medical records of other prisoners with similar conditions and to explore their experiences with the collegial review process. Is that right, I would agree that it could potentially lead to additional discovery. That's the plaintiff's burden of proof. That's their obligation to conduct that discovery. And in this particular case plaintiff. So the timing of the issue, the timing of the affidavits is at issue because they had the ability to conduct that discovery for three and a half years and chose not to do so. There was actually appointed counsel in this case approximately eight months into the matter, I believe, maybe a little bit more December of 2016 Was when counsel got appointed. So there was ample time two years was when discovery closed from the date counsel got appointed But let's look at the probative value of these affidavits looking at them in and of themselves. The ones from Mr. James and Mr. Simmons both discussed physical therapy at Hill Correctional Center. That has nothing to do with this case physical therapy was not an issue as part of the collegial review process that was presented at trial, nor in the pleadings beforehand. And it was at a different correctional center. Additionally, if you look at Mr. Hall's affidavit. He never really attributes his issues to the collegial review process or utilization management. He just states that he had an issue. That's not relevant to this case whatsoever. And lastly, if you look at Mr. Couch's affidavit. There's several issues with this affidavit. But Mr. Couch's affidavit actually kind of supports Weixford's position because he received an MRI, which had to be through collegial review because it was orthopedic, not emergency. And he also received at least two orthopedic consults. He received one because he had to receive a follow up. He notes a follow up. But he never alleges any delay attributed to collegial review process. The only I'll say quote unquote delay, he alleges, is that it took him 26 days to get the MRI results. That's not relevant to the issue that we have in this matter. With respect to the collegial review process in Mr. Howell's case, I gather Dr. Ritz appears to have played a decisive role in a number of these referrals that were denied, correct? That is correct. Would it be appropriate in discovery for a plaintiff in the case if we were doing this case all over again? Would it be appropriate for a plaintiff to seek discovery of Dr. Ritz's compensation arrangements with Wexford and his personnel file to see in essence, is this fellow being reprimanded for these sorts of decisions or is he being rewarded for making these sorts of decisions? Your Honor, I'm not going to lie. That discovery has occurred, not particularly to Dr. Ritz, but similar types of discovery have occurred in other cases. And there is no evidence at this time that Wexford physicians receive any compensation for approvals or denials. In fact, Wexford is actually not the one who pays for outside medical furloughs. Under the Affordable Care Act, medical furloughs are now being paid through Medicaid or the Department of Human Services. So there's actually no incentive for Wexford to be denying these because it gets paid by the state of Illinois for these outside medical referrals. But I will say that Dr. Ritz in this case, you can see and it outlines, he uses his professional judgment. He is a physician. He was looking at the care that was already provided. For example, we already know he received an MRI. Mr. Howell already had received surgery. There are three collegial reviews at issue in this case. And that was actually outlined by the court in its order. One was April of 2015, one was November of 2015, and one was February of 2016. Now, counsel had actually just said if it was one or two, maybe we wouldn't be here. So does that mean three makes it okay? I'm not sure of where that line is, but these weren't denials. These were alternative treatment plans. One of them was to receive a follow-up MRI, which is entirely reasonable. And plaintiff hasn't even provided any expert testimony that such a recommendation, such an alternative treatment plan was unreasonable in this case. Additionally, the other two, Dr. Ritz simply stated that he needed more information regarding the care that was being provided. For example, plaintiff was supposed to be doing physical therapy. Plaintiff admits that he did not abide by the home exercise program that he was given. I personally know from experience, physical therapy is an important part of rehabilitation after an injury. Plaintiff admitted he was not doing that. So that does play a factor into the care that will be provided. So Dr. Ritz, although he did play that role, these were not outright denials. These were to obtain more information in order to provide the medically necessary treatment that plaintiff needed at that time. Frankly, Your Honors, if Dr. Coase would have said from the beginning of this that plaintiff should have just had the ACL surgery, we wouldn't be here at all. But it was actually the outside specialist who recommended this more conservative course of treatment throughout the care of Mr. Howell. Which then in turn led to discussing other options and whether ACL surgery was eventually needed as a last resort. And that is a quote from Dr. Coase. Your Honors, when you look at this case as a whole, from the date of the original injury until the date he received two separate follow-up appointments after his ACL reconstruction surgery, plaintiff had received 14 collegial referrals. One of them resulted in x-ray, two MRIs, two surgeries, and six orthopedic consults. It was obvious that he was receiving care. When you look at the totality of the circumstances in this case, plaintiff was receiving more treatment than frankly someone of low income who is on Medicaid would have received on the outside. So the fact that counsel wants to now say that this is not related to, this is not akin to an insurance issue, this is what insurance companies do every day. This is actually what Medicaid does. This is what other medical providers do on a daily basis. Actually, the difference for collegial review is that there are safeguards to ensure that all the medically necessary treatment that is required is going to be provided. One of those safeguards actually occurred in this case. Dr. Ritz said he needed more information. Dr. Trost decided to appeal that decision. And Dr. Garcia, another UM physician, decided to approve that orthopedic consult. And once Dr. Barr decided to recommend the ACL surgery go forward, it was immediately approved. So this is all based on physician judgment, based on what is medically necessary. This has nothing to do with the collegial process as a whole. It's the application of that process. And in this case, when you look at it, it was applied as appropriate for the treatment that Hal needed at that period of time. Further, this case is not one that the instances are so numerous that it can be upheld as a widespread custom and practice in and of itself. Typically, widespread custom and practice, keyword widespread, applies to more than one individual. If you look at the UM utilization management or collegial review policy, it applies to Illinois Department of Correction facility as a whole. We're talking about 30 or 40,000 inmates in a given year that this policy and procedure would apply to. So if this was so widespread, plaintiffs should have had absolutely no difficulty finding other inmates that had issues with the collegial review process and its application. How easily do prisoners communicate with others throughout the rest of the system? Your Honor, I believe you've heard your fair number of prisoner cases. And this one's an example. He had four affidavits from other prisoners. They just weren't on point. And there's a reason for that, because the collegial review process in and of itself is not inherently an unconstitutional policy or procedure. So I cannot definitively say how common it is to communicate with other inmates. We also see cases like, say, the Dean case with the jury verdict in that case. I'm sorry, Your Honor, which case? The Dean case in the Central District of Illinois with an $11 million verdict with collegial review allegedly delaying cancer treatment. So there are a wide variety of these cases. There's a wide variety of cases involving collegial review. But if you look at the specifics of collegial review, it's how it's being applied. It's not the process in and of itself. For example, in this case, there were three different collegial physicians who were involved in Mr. Powell's care. It was only Dr. Ritz who had these alternative treatment plans. Of these 14 collegial reviews that he had throughout his care, the only ones that we have issue with are Dr. Ritz. Now, that's not to say that Dr. Ritz did anything wrong. He was using his medical judgment. But what that does implicate is that if there is an issue, it's against Dr. Ritz. It's not against the collegial review process in and of itself. So, based on the arguments that have worked so far in this case, what plaintiffs need to do is sue everybody in sight and seek the widest possible discovery to bring an effective, viable custom and practice claim against Wexford, right? I would say that if a plaintiff feels that they have been wronged, they have the right to sue the people who they believe wronged them. That's without a question. That's also why we have the Merit Review Orders under the Prison Allegation Reform Act in order to safeguard for those who failure to state a claim. But discovery is necessary for any case to meet plaintiff's burden of proof. And as I see that I'm out of time, thank you very much. Thank you, Ms. Ritz. Mr. Pearl? Just a couple follow-ups. Our Supreme Court in Pemba versus Cincinnati, that's 475 U.S. 469, said no one has ever doubted that a municipality may be liable under Section 1983 for a single decision by its properly constituted legislative body. So this business about, well, we've got to have multiple instances across multiple institutions certainly flies in the face of the Supreme Court decision here. I think just the other follow-up here. The court said plaintiff didn't present sufficient evidence for the jury to conclude that the denials that occurred in the case reflected a practice attributed to Wexford to sustain liability. And I think that the biggest issue is defendants filed their motion in limine to prevent any testimony about this subject. And then now what they're saying is they should have presented such testimony. And you can't have it both ways. It's very rare, as the courts know, to get a favorable plaintiff's verdict by a jury on these Section 1983 cases. And I think it sets a bad precedent when there is such a verdict for courts to overturn that. Thank you, Your Honor. Thank you, Mr. Kerr. Thanks to both counsel.